# DERN et al., STATE BOARD OF LOAN COMMISSIONERS, v. WALKER, STATE TREASURER.

No. 4668.  Decided January 17, 1928.  (263 P. 83).

See, also, 71 Utah 130, 263 P. 84.

CHERRY, J.

This proceeding is for the purpose of vindicating the legal power of the state board of loan commissioners to invest the sinking funds provided for the redemption of bonds issued by the state. The authority for the power asserted is found in Comp. Laws Utah 1917, §§ 3809-3812, as follows:

"3809. The state board of loan commissioners is hereby authorized and directed to invest the redemption funds for the redemption of the bonds issued by the state of Utah in state, municipal, or school district bonds of this state, or in warrants on the reservoir land grant fund issued under the provisions of secs. 5659-5670."

"3810. Whenever the state board of loan commissioners shall order the investment of any of said funds, it shall make a requisition upon the state auditor, and he shall draw his warrant for the amount stated in requisition upon said redemption fund."

"3811. Whenever any bonds are purchased as investments of said fund, the same shall be delivered to the state treasurer, who shall be charged upon his official bond for the safekeeping of said bonds."

"3812. As the interest matures on any of the bonds purchased as an investment of said fund, the state treasurer shall collect the same and deposit the proceeds thereof in the general fund of the state."

On December 5, 1927, the board of loan commissioners ordered the investment of $1,000 of the University bond redemption fund in a state of Utah road bond, bearing interest at 4½ per cent payable semi-annually. The bond was purchased in the market and at a premium, the price being rated to yield 4 per cent interest per annum, and amounted as commercially quoted to $1,046 plus accrued

interest. To simplify the transaction and to facilitate accounting, the premium agreed to be paid was adjusted by the seller clipping from the bond and retaining unearned interest coupons for the amount of the premium, so that the form of the transaction was the purchase of a bond of the par value of $1,000 for the sum of $1,000, with no interest payable until 18 months hence, after which the interest was payable at the rate of $4\frac{1}{2}$ per cent per annum.

Requisition upon the auditor was accordingly made, and a warrant was drawn upon the University redemption fund for the price of the bond, and the bond as purchased was tendered to the state treasurer for safe-keeping. The state treasurer objected to the proceeding and refused to accept the bond, whereupon the board of loan commissioners applied to this court for a writ of mandate requiring the state treasurer to accept and safely keep the bond as provided by law. An alternative writ was issued returnable on January 4, 1928, at which time the matter was submitted to the court upon the brief of the attorney general.

The objections of the state treasurer, so far as we are advised, are that the transaction, in substance, involves the use of the general funds of the state to the extent of the premium paid, for which there is no authority at law, and that the matter of doing it complicates the accounting systems of the state auditor and state treasurer, and disturbs the fiscal affairs of the state. It is asserted that, when prospective revenues are estimated in making up the state's budget for each biennium, each of the redemption funds of the state are relied upon to earn interest at the rate of not less than two per cent per annum (the minimum rate for money deposited in banks), and that appropriations are made upon that estimation; that, when investments like the one in question are made, the revenues of the state are diminished below the estimated amount by the loss of anticipated interest for the period covered by the detached coupons. This is said to be equivalent, in legal effect, to taking such a sum of money out of the general fund of the

state without any authority from the Legislature to do so. It is of course admitted that, when interest on the investment is paid, the amount thereof is greater, and, on the whole is advantageous to the state. The objection relates merely to interest on the sum invested for that period of time represented by the interest coupons which have been detached, and during which the state in fact receives no interest upon the investment.

That the manner of making the investment complicates bookkeeping or accounting or deranges fiscal estimates, cannot be here considered, because neither has any relation to the legal power of the board of loan commissioners to invest the fund in question. The objections to the power as asserted is thus reduced to the claim that the transaction is, in substance, an appropriation of money out of the general funds of the state to the extent of the premium on the bond purchased without legislative authority therefor. The claim cannot be supported in fact or in law. As a matter of fact, the transaction does not affect the general fund except by postponing an estimated addition to it for a short period and then substantially increasing it; so that, on the whole, the general fund is materially enlarged even beyond the estimate referred to. Such is not an appropriation of general funds. The restriction that state funds may not be disbursed without legislative authority of necessity refers to those funds which have been received by the state, and the fact that the transaction in question results in postpoing the receipt by the state of an estimated sum of money can in no proper sense be deemed an appropriation of the sum.

A further question concerning the investment in dispute has been suggested relating to whether the board of loan commissioners are required by law to invest the University bond redemption fund in securities, the interest upon which is not less than a particular rate. We find no limitation of law respecting this matter applicable to the investment of this particular fund.

The power of the board of loan commissioners to invest the University bond redemption fund is defined by section 3809 of the statute above quoted, and is subject only to the limitations therein expressed. The limitations as to the rate of interest required upon the investment of particular funds, such as the redemption fund for the bond issue for state roads (Laws of Utah 1919, c. 59), the Utah soldier settlement fund (Laws of Utah 1921, c. 76), and the sinking fund for state deficit bonds (Laws of Utah 1921, c. 77), have no application to the investment of the University bond redemption fund.

We thus conclude that the action of the board of loan commissioners in investing the funds in question was in all respects regular and within its legal authority, and that it was the plain duty of the state treasurer to accept and safely keep the bond tendered him.

It is accordingly ordered that a writ of mandate be issued as prayed for.

THURMAN, C. J., and STRAUP, HANSEN, and GIDEON, JJ., concur.